### In re RHEEM. *

### SHINN v. MILBOURNE.

### No. 6387.

United States Court of Appeals for the District of Columbia.

Argued May 8, 1935.

Decided June 10, 1935.

William E. Richardson and Ward B. McCarthy, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and C. R. Heflin, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Edmund D. Rheem was adjudicated an involuntary bankrupt February 10, 1931. The administration of the estate apparently proceeded in the usual manner. Creditors' meetings were held, claims against the estate were filed, including a claim of the United States for taxes for the year 1930 in the amount of $1,533.20; and, though the record on the subject is silent, we presume that orders of sale of the property of the estate were duly made and the assets of the estate collected and brought under the control of the court. On August 7, 1934, the trustee filed his final account and a meeting of creditors was called to be held on August 20. Notice of this meeting was sent to all scheduled creditors, including the collector of internal revenue. At the meeting the claim of the United States, together with other claims entitled to preference, was allowed in full and a first and final dividend of a little more than one-half of 1 per cent. in favor of general creditors was declared by the referee. Three days later the trustee had prepared and signed the distribution sheets, and checks payable to three-quarters of the total number of the general creditors had been made out, though whether actually signed does not appear. There had been no delivery, and on that day the trustee presented the referee's dividend sheets and allowances to the District Court for ratification. Subsequently, on that same day, the referee received by mail from the collector of internal revenue an "amended proof of claim," through which the collector, in addition to the $1,533.20 covered in the original claim, asserted claim for additional taxes due the United States for the

---

*Writ of certiorari denied 56 S. Ct. 148, 80 L. Ed. ——.

years 1923–1927, inclusive, aggregating $114,877.70.

This claim, if allowed, will exhaust the estate and leave nothing payable to general creditors.

The referee returned to the collector the amended proof of claim, stating that it had been received too late for participation in the funds of the estate. Thereafter the District Court issued an order, at the instance of the collector, restraining the referee and trustee from making the disbursement of dividends to creditors pending review, and in October, 1934, entered an order reversing the order of the referee rejecting the government's amended claim; and from that order this appeal is taken.

The basis of the appeal is that the declaration of dividends by the referee in favor of general creditors—notwithstanding the money for distribution is still in the custody of the court, bars the participation of a claim for taxes filed after the declaration of dividends is signed.

We think this position cannot be sustained. Section 64a of the Bankruptcy Act, as amended by Act May 27, 1926, 11 USCA § 104 (a), provides that the court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality, in the order of priority as set forth in paragraph (b); and paragraph (b), as amended, provides: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (6) taxes payable under paragraph (a) hereof. * * *" 11 USCA § 104 (b) (6).

The provisions of section 57n, as amended May 27, 1926, 11 USCA § 93 (n), which declare that claims shall not be proved against a bankrupt estate subsequent to six months after adjudication, do not include claims of the United States for taxes. "It is admitted here, that as the United States and the States are not mentioned in the limitation of section 57, they are not bound thereby." New York v. Irving T. Co., 288 U. S. 329, 331, 53 S. Ct. 389, 390, 77 L. Ed. 815.

In the case last cited, what is called a "bar order"—i. e., an order limiting the time of filing a claim for taxes—was held sufficient to prohibit the filing of the claim after the expiration of the bar order date. The ground on which the order was upheld is stated by the Supreme Court to be the necessity that bankrupt estates be promptly closed. The case concerned a claim for state taxes, and we may assume that the Supreme Court will apply the rule in a case involving a tax claim on behalf of the United States; but that question is not present here for, admittedly, no bar order was asked for or entered in this case. Lacking such an order, it is fundamental that the United States is not bound by statutes of limitations in the Bankruptcy Act or any other act, unless Congress has expressly said it should be, and it is equally fundamental that its rights and interests cannot be prejudiced by negligence or delay on the part of its agents.

Applying these principles to the facts of this case, the result seems to us so conclusive as to make anything more a waste of time. Here the money of the estate of the bankrupt is still in the custody of the court. No general creditor of the estate has any valid claim to any part of it until taxes given priority by sections 64a and 64b are paid; and since, as to these, there is no provision of the law, and in this case no administrative order, requiring the filing of the claim of the United States within any particular period of time, it seems to us perfectly clear that there can be no valid ground for rejecting the claim whenever filed—at least—so long as the fund, out of which it is entitled to be paid, remains intact.

In this view, it would be going very far to say that the making out of dividend sheets, or the drawing of checks, though done in good faith and in the light of the then known facts, so earmarks the fund as to destroy the power of the court to control it. We think not. Nor does it change the rights of the parties that there was a formal declaration of a dividend, for there can rightfully be no dividend until the tax is paid. Certainly, therefore, until delivery of the dividend checks—if not until their payment—the inherent power of the court to correct an error or right a wrong, is undiminished.

Affirmed.